Donald JOHNSON, Petitioner–Appellant,

v.

Bart ROSS, Superintendent, Arthur Kill Correctional Facility, Respondent–Appellee.

No. 319, Docket 90–2583.

United States Court of Appeals, Second Circuit.

Argued Oct. 8, 1991.

Decided Jan. 28, 1992.

Robert J. Boyle, Brooklyn, N.Y., for petitioner-appellant.

Nancy D. Killian, Asst. Dist. Atty., New York City (Robert T. Johnson, Dist. Atty., Stanley R. Kaplan, Asst. Dist. Atty., of counsel), for respondent-appellee.

Before OAKES, Chief Judge, VAN GRAAFEILAND and NEWMAN, Circuit Judges.

OAKES, Chief Judge:

Donald Johnson appeals from an order of the United States District Court for the Southern District of New York, Louis L. Stanton, *Judge*, denying his petition for a writ of habeas corpus. The district court found, *inter alia*, that even if the trial court's admission of the witnesses' out-of-court identifications of Johnson's clothing were so prejudicial as to give rise to a due process claim, any error committed in admitting this evidence was harmless beyond a reasonable doubt. Because we believe that the admission of testimony regarding the identification of Johnson's clothing cannot form the basis of a due process claim, we affirm.

## I

As the district court explained, the prosecution presented evidence showing that in March 1986, Gloria Salinas, while working in a store in the Bronx, was accosted by a man who pointed a gun at her and took more than one hundred dollars in bills from behind the counter. After the man left with the money, Salinas followed him out of the store. Once outside, she pointed to the man and screamed to her acquaintance, Caesar Santaella, that the man had just robbed the store. When the man started to run, Santaella chased him until Santaella was halted by two policemen who themselves took up pursuit. The officers, without losing sight of the man, caught him in an abandoned lot. A frisk revealed a gun and $165 in bills.

The man the police caught was the appellant, Donald Johnson. Within one half-hour of apprehending Johnson, the police asked Salinas to view Johnson alone in a small room at the police station, where she identified him as the perpetrator of the

robbery. She also identified the hat and jacket worn by Johnson at the time of his arrest as those worn by the man who stole the money from the store. Santaella also identified the hat at the station.

Prior to trial, the trial court found the evidence of Salinas' station-house identification of Johnson improperly suggestive and suppressed it. The court, however, refused to suppress the identifications of his hat and jacket. Thus, at trial, Salinas testified to her station house identification of the hat and jacket and also identified them again; Santaella testified similarly with respect to the hat. Johnson was convicted, after a jury trial, of first degree robbery. The Supreme Court of New York, Appellate Division affirmed his conviction. *People v. Johnson*, 155 A.D.2d 236, 546 N.Y.S.2d 849, 850 (1st Dep't 1989). The New York Court of Appeals denied leave to appeal. 75 N.Y.2d 814, 552 N.Y.S.2d 564, 551 N.E.2d 1242 (1990).

## II

■ Johnson first claims that the trial court's refusal to suppress the identifications of his clothing denied him due process of law under the Fourteenth Amendment. He reasons, pursuant to *Sanchell v. Parratt*, 530 F.2d 286, 292–294 (8th Cir.1976), that the identifications of his clothing were tainted by the preceding suggestive showup and should have been suppressed under *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

*Neil* provides that the admission of evidence, regarding a witness's out-of-court identification of a suspect, violates the defendant's right to due process when such evidence would create a very substantial likelihood of misidentification. *Neil*, 409 U.S. at 198, 93 S.Ct. at 381.[1] Under this standard, even a suggestive identification of a suspect will be admitted if the totality of the circumstances indicate that the identification was reliable. *Id.* at 199, 93 S.Ct.

at 382. Thus, to prevail Johnson must show that there exists a very substantial likelihood of misidentification.

In *Sanchell*, several witnesses participated in visual showups which were determined to give rise to a denial of due process. *Sanchell*, 530 F.2d at 294–95. The court suppressed subsequent suggestive voice identifications: not only could the witnesses see the suspect, who they knew had been charged, but the suspect was black and his was the only voice of a black male that they heard. *Sanchell*, 530 F.2d at 297. Under these circumstances, the court found that the voice identifications were influenced by the earlier tainted visual showups. *Id.* In deciding to suppress the voice identification evidence, the court determined that the admission of this evidence created a substantial likelihood of irreparable misidentification. *Id.* at 296–97.

Although the case indicates that the suggestiveness of a visual identification can taint a subsequent voice identification, and that voice identification evidence can give rise to a due process violation, the case fails to address whether an identification of clothing that was rendered suggestive by an earlier showup can give rise to a substantial likelihood of misidentification—the gravamen of a due process violation. Indeed, appellant has pointed to no cases, and our research has revealed none, where the identification of physical evidence created constitutional concerns regarding the risk of misidentification.

■ In addition to the absence of precedent, Johnson's claim is flawed because the special dangers attendant to the identification of suspects do not exist with equal strength where the identification of clothing is concerned. Of course, the procedures used to obtain an identification of clothing can be suggestive. But it is the notorious inaccuracy of eyewitness identifications of *suspects* that gave the initial

---

1. Note that the standard for the admissibility of an in-court identification that follows a pre-trial identification is similar: whether the pre-trial identification procedures lead to "a very substantial likelihood of *irreparable* misidentifica-

tion." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968) (emphasis added). *See also Dickerson v. Fogg,* 692 F.2d 238, 244 (2d Cir.1982).

impetus to scholarly concern and judicial remedies. *See* Felice J. Levine, *The Psychology of Criminal Identification: The Gap From* Wade *to* Kirby, 121 U.Pa.L.Rev. 1079, 1081 (1973) ("Erroneous identification of suspects has long been recognized by commentators as a crucial problem in the administration of justice."); *United States v. Wade*, 388 U.S. 218, 228, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967) ("The identification of strangers is proverbially untrustworthy.") (quoting Justice, then Professor, Felix Frankfurter, *The Case of Sacco and Vanzetti* 30 (1927)). Moreover, the unfairness that results from a potentially inaccurate, confrontational identification of a suspect is compounded by the persuasiveness with which juries regard this evidence. Levine, *supra*, at 1081–82. As the Supreme Court explained in *Wade:* "The trial which might determine the accused's fate may well not be that in the courtroom but that at the pretrial confrontation, with ... the witness the sole jury ... and with little or no effective appeal from the judgment there rendered by the witness—'that's the man.'" *Wade*, 388 U.S. at 235–36, 87 S.Ct. at 1937. We have no basis to believe that a witness's identification of clothing is either as susceptible to error or as persuasive to a jury as a witness's identification of a suspect. Indeed, a clothing identification is—particularly in this day and age of mass-marketing—often open to the argument that someone other than the perpetrator may have worn the same clothing. Thus, we find that identification of clothing is not a procedure so inherently "conducive to irreparable mistaken identification," *Foster v. California*, 394 U.S. 440, 442, 89 S.Ct. 1127, 1128, 22 L.Ed.2d 402 (1969) (quoting *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967)), as to provide the basis for a denial of due process. Any suggestiveness is of course a proper matter for cross-examination as well as argument. Therefore, Johnson's claim must fail.

Johnson next claims that the trial court's improper admission of hearsay testimony of Salinas and Santaella, regarding their station-house identifications of his clothing, violated his right to due process. The erroneous admission of evidence rises to a deprivation of due process under the Fourteenth Amendment only if the evidence in question "was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir.1985). At Johnson's trial, apart from the challenged evidence identifying the clothing, the prosecution presented highly probative evidence of Johnson's guilt. As the district court noted, a closely-linked chain of witnesses connected Johnson to the robbery. When arrested he possessed a handgun as well as money of a quantity, and in denominations, consistent with Salinas' testimony regarding what had been taken from the store. Finally, although the jury was instructed that it could disregard his statement if it were involuntary, Johnson admitted to police officers that he had taken money from the store. This evidence demonstrates that even if the testimony regarding the station-house identification of Johnson's clothing were inadmissible hearsay, it neither provided the basis for his conviction nor removed a reasonable doubt that would have existed without it. Thus, appellant's claim is unavailing.

Affirmed.

JON O. NEWMAN, Circuit Judge, concurring in the result:

In this habeas corpus challenge to a state court conviction, the District Judge sensibly avoided deciding the constitutional question of whether a witness's identification of clothing was tainted by an impermissibly suggestive viewing of the suspect and ruled that any error was harmless beyond a reasonable doubt. Because I consider the constitutional issue far more troubling than do my colleagues and because the harmless error ruling made by Judge Stanton is so plainly correct, I concur in the judgment on the ground decided by the District Court.

The issue is not whether constitutional error occurs whenever a witness is shown one item of clothing and asked if he can

identify it as having been worn by the perpetrator of a crime. I agree with Chief Judge Oakes that identification of clothing is not a procedure so inherently conducive to irreparable mistaken identification as to create the basis for a claimed denial of due process. The issue here concerns the significance of taint. The state trial court ruled that the viewing of the suspect by the witness Gloria Salinas in a one-person show-up was impermissibly suggestive. That Court suppressed Salinas's identification of the defendant. The defendant contends that the vice of focusing a witness's eye upon just one suspect and thereby unduly influencing the witness to identify the suspect carries over when, immediately after a one-person show-up, the witness is shown one article of clothing and, not surprisingly, identifies it as clothing worn by the perpetrator during the crime.

The fact that Johnson has no precise precedent for his claim of taint does not defeat the claim. The prosecutor is equally lacking in a precedent rejecting the claim of taint. The one reported decision bearing on the issue, *Sanchell v. Parratt*, 530 F.2d 286 (8th Cir.1976), lends some support to Johnson's position, though it is distinguishable. In *Sanchell*, a voice identification was suppressed on the ground that it was tainted by an unduly suggestive show-up of the suspect that immediately preceded the voice identification. It may well be that the risk of misidentifying a voice is greater than the risk of misidentifying clothing in many instances, although I would suppose that where the voice is distinctive and the clothing is not, the risks are reversed. However the risks are assessed, *Sanchell* indicates that the taint from an unduly suggestive show-up is cause for some concern.

Moreover, Johnson's claim raises two issues of taint. In addition to the risk that Salinas was unduly influenced to identify the clothing by the suggestiveness of the immediately preceding one-person show-up, there is also the concern that the clothing identification, regardless of its reliability, was tainted simply by the fact that it was the result of police misconduct. In some circumstances, evidence is deemed tainted by prior police misconduct even if the reliability of the subsequent evidence is not challenged. *See Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) (fingerprints obtained during unlawful arrest). Evidence is suppressed if it was obtained by exploitation of "the primary taint," *see Wong Sun v. United States*, 371 U.S. 471, 486, 83 S.Ct. 407, 416–17, 9 L.Ed.2d 441 (1963) (statements obtained during unlawful arrest). Whether the "fruit of the poisonous tree" doctrine applies to evidence obtained as a result of an unduly suggestive show-up is a substantial issue.

Since the evidence of Johnson's guilt is so overwhelmingly established without any weight at all placed on the clothing identification, I would not reach any aspect of Johnson's taint claim and would affirm solely on the ground that any error as to the clothing was harmless beyond a reasonable doubt.